Jesse Lee GOINS and Arthur Dean Davis, Jr.
*v.* STATE of Arkansas

CR 94-678                                            890 S.W.2d 602

Supreme Court of Arkansas
Substituted opinion delivered January 17, 1995[1]

*Reporter's Note: This opinion was originally delivered November 21, 1994.

*Donald H. Smith*, for appellant Goins.

*Robert N. Jeffrey*, for appellant Davis.

*Winston Bryant*, Att'y Gen., by: *Brad Newman*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. The appellants, Jesse Lee Goins and Arthur Dean Davis, Jr., raise six and four points, respectively, for reversal of their convictions on charges of aggravated robbery, for which they were both sentenced to terms of life imprisonment. Three of the arguments are overlapping. None has merit, and we affirm the judgments.

Due to the number of points on appeal, we set forth the various issues as framed by Goins and Davis, noting those arguments that overlap:

I. *(Goins)* and II. *(Davis)* Whether the trial court erred in denying the appellants' motion for a continuance.

II. *(Goins)* Whether the trial court erred in denying appellant Goins's motion to sever the defendants.

III. *(Goins)* and I. *(Davis)* Whether the trial court erred in denying the appellants' motion to suppress the photo identification of Goins and Davis.

IV. *(Goins)* and III. *(Davis)* Whether the trial court erred in denying the appellants' motion to strike the jury panel.

IV. *(Davis)* Whether the trial court erred in denying appellant Davis's motion for a mistrial following a courtroom disturbance involving appellant Goins.

V. *(Goins)* Whether the trial court erred in overruling appellant Goins's objection to a remark made by the Deputy Prosecutor during closing argument.

VI. *(Goins)* Whether the trial court erred in denying appellant Goins's motion for a directed verdict.

*Facts*

In the morning of January 20, 1994, Melissa Price, the co-owner and manager of the Prattsville One-Stop, a convenience store in Prattsville, Grant County, Arkansas, was accosted by two men who had entered the store while she was in the back doing paper work. One of the men, whom she later identified as Lamar Boris Davis, pointed a small handgun at her while the other, whom she subsequently identified as his brother, appellant Arthur Dean Davis, Jr., put a large lock-blade knife to her throat and said, "We need your money." Pressing the knife at her throat, the man identified as appellant Davis told Ms. Price not to look at him and to open the cash register. Meanwhile, the man identified as Lamar Davis continued to point his gun and her and warned her "to quit looking at him."

After Ms. Price opened the cash register, the two men took

cash from it, along with a bank bag containing the day's deposit. Then, they ordered Ms. Price to lie on the floor, where they attempted to tape her arms to her body. The two men had succeeded in taping one arm when they heard a car pulling up to the gas pumps outside. At that point, they ran to a waiting vehicle driven by a third person, appellant Jesse Lee Goins. Ms. Price was able to see the "large, blue, four-door car" clearly and to obtain its license-plate number, and Barry Cooper, the customer who had just arrived, saw appellant Davis and another man run out of the store to an "[o]ld, blue car."

Acting on the information supplied by Ms. Price, Dallas County Sheriff Donny Ford and other law enforcement officers stopped the vehicle near Fordyce and placed Jesse Goins, Arthur Davis, and Lamar Davis under arrest. The vehicle in question and the license-plate number matched the descriptions reported to Grant County authorities by Ms. Price. During a search of the vehicle, Sheriff Ford discovered a stainless-steel handgun in the back seat, a lock-blade knife in the glove compartment, and money on the floorboard.

The three men were charged with aggravated robbery, in violation of Ark. Code Ann. § 5-12-103 (Repl. 1993). Lamar Davis was tried separately, and his conviction was recently affirmed by this court. *Davis v. State*, 318 Ark. 212, 885 S.W.2d 292 (1994). Appellants Jesse Goins and Arthur Davis were tried as co-defendants before a jury in the Grant County Circuit Court on March 17, 1994. They were both found guilty and were sentenced individually to life imprisonment. From that judgment, this appeal arises.

### Directed verdict

Goins, in his Point VI, contends that the trial court erred in denying his motion for a directed verdict. A directed verdict motion is a challenge to the sufficiency of the evidence. *Graham v. State*, 314 Ark. 152, 861 S.W.2d 299 (1993). As such, it must be addressed by this court before any other points on appeal. *Hendrickson v. State*, 316 Ark. 182, 871 S.W.2d 362 (1994).

After the State rested in the present case, counsel for Goins moved "for a directed verdict of acquittal on behalf of

Jesse Goins, insufficient evidence to send to the jury." Subsequently, after the close of all the evidence, counsel for Goins stated that "[w]e rest on behalf of Jesse Goins, and ask for a directed verdict." In both instances, Goins failed to preserve his challenge to the sufficiency of the evidence by neglecting to apprise the trial court of the specific basis on which each motion was made. *See Middleton* v. *State*, 311 Ark. 307, 842 S.W.2d 434 (1992); *Pilcher* v. *State*, 303 Ark. 335, 796 S.W.2d 845 (1990).

We recently reaffirmed our position, in *Daffron* v. *State*, 318 Ark. 182, 885 S.W.2d 3 (1994), and *Walker* v. *State*, 318 Ark. 107, 883 S.W.2d 831 (1994), that a general reference to "insufficient evidence" does not meet the demands of Ark. R. Crim. P. 36.21(b). Such a general motion constitutes a waiver of the right to challenge the sufficiency of the evidence. *Daffron* v. *State, supra.* Directed verdict motions must state specific grounds. *Middleton* v. *State, supra.* The sufficiency issue having been waived, its merits need not be addressed. *Andrews* v. *State*, 305 Ark. 262, 807 S.W.2d 917 (1991).

### Motion for continuance

Goins, in his Point I, and Davis, in his Point II, argue that the trial court erred in denying their respective motions for a continuance. The motions were made in chambers before jury selection began. Both appellants assert on appeal that a continuance was necessary because of the unavailability, due to surgery, of an alibi witness. However, Davis's attorney did not specifically join Goins's attorney in making a motion for a continuance on that basis. But, prior to trial, Davis independently sought a continuance on the basis that his attorney, Robert Jeffrey, did not represent him until four days before the trial began and that he therefore did not have adequate time for preparation.

In order to obtain a continuance, the appellant must make a showing of good cause. *Davis* v. *State, supra.* A motion for a continuance is addressed to the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. *King* v. *State*, 317 Ark. 293, 877 S.W.2d 583 (1994). The defendant has the burden of proof in demonstrating the abuse of discretion. *Jones* v. *State*, 317 Ark. 131, 876 S.W.2d 262 (1994). That burden entails a showing of prejudice. *King* v. *State*, 314 Ark. 205, 862 S.W.2d 229 (1993).

■     Goins's attorney stated that Billy Johnson, a prospective alibi witness, could place Goins "in Camden or near Fordyce and Camden" at the time the robbery occurred. Davis's attorney, as noted above, did not specifically join in the motion on that ground, and we therefore need only address the unavailability issue as it pertains to Goins.

Goins showed no diligence in attempting to secure the presence of the witness but instead made his motion for continuance immediately before trial. Moreover, he made no proffer of the prospective witness's testimony. Instead, counsel for Goins offered the following explanation:

> . . . I got over here to talk to Mr. Goins on Wednesday, and at that time I discovered the name of a witness that would be an alibi witness that would place him in Camden or near Fordyce and Camden at the time that this alleged crime took place. He was supposed to be here according to other witnesses, but I am advised he entered the hospital yesterday and is unable to attend Court.
>
> I am trying to obtain information on what he is doing in the hospital and whether it is a legitimate thing, but he is supposed to be here, but he can't be here because he is in the hospital. Billy Johnson.

This vague statement, in which Goins's attorney seemed unclear as to the substance of the prospective witness's testimony, was no substitute for a proffer. Under the circumstances, Goins has failed to show how the trial court abused its discretion in denying Goins's motion for a continuance. *See Butler* v. *State*, 303 Ark. 380, 797 S.W.2d 435 (1990).

■     With respect to Davis's claim that the trial court should have granted a continuance because his attorney lacked adequate time to prepare for trial, it is apparent that, contrary to Davis's assertion that Mr. Jeffrey had a mere four days for trial preparation, the attorney had been involved in the matter for nearly two months prior to trial and was familiar with the case. Mr. Jeffrey represented all three co-defendants at a bond hearing on January 24, 1994, and spoke with Davis about the case at that time. He admittedly received all discovery in the case. Subsequently, though, another attorney, Norman Mark Klappenbach,

was brought in to represent Davis, and Goins retained his own counsel.

When a motion for a continuance is based on a lack of time to prepare, this court will consider the totality of the circumstances. *Gonzales* v. *State*, 303 Ark. 537, 798 S.W.2d 101 (1990). Only on March 13, 1994, four days before the March 17, 1994 trial date, did the circuit court actually appoint Mr. Jeffrey to represent Arthur Davis. Yet he was not, by virtue of this late appointment, cast into a legal void. He had represented all of the co-defendants less than two months earlier and had conferred with Davis about the case. As in *Davis* v. *State, supra*, the attorney argued primarily in general terms that he lacked adequate time in which to prepare for trial, pointing specifically only to his late formal appointment. Yet, unlike the situation in *Davis*, where the only specific complaint was that the attorney did not receive discovery materials until ten days before the trial, here Mr. Jeffrey acknowledged having received discovery in advance. In sum, Davis is unable to show what the attorney failed to do that could have been done, or what he did that he would not have done, had he been afforded more time. *Davis* v. *State, supra; Brandon* v. *State*, 283 Ark. 478, 678 S.W.2d 341 (1984). The trial court did not abuse its discretion in denying Davis's motion for a continuance.

*Motion to sever*

In his Point II, Goins urges that the trial court erred in denying his motion to sever his case from that of Davis. Goins's attorney filed a motion to sever on the basis of conflicting positions with respect to Goins and Davis, and the trial court denied the motion after having been advised by the State that a statement given to the police by one of the defendants did not implicate the other. Goins later failed to renew the motion.

Under Ark. R. Crim.P. 22.1(b):

(b) If a defendant's pretrial motion for severance was overruled, he may renew the motion on the same grounds before or at the close of all the evidence. *Severance is waived by failure to renew the motion.*

(Emphasis added.) In *Jacobs* v. *State*, 317 Ark. 454, 878 S.W.2d 734 (1994), this court held that an attorney's statement that "I renew all motions, including motion for directed verdict" was insufficient to preserve the issue of severance for appeal.

Similarly, here, counsel for Goins, as noted earlier, simply declared, "We rest on behalf of Jesse Goins, and ask for a directed verdict." The severance issue is thus not preserved for appellate review.

### Photo identification

Goins, in his Point III, and Davis, in his Point I, contend that the trial court erred in denying their motions to suppress the pre-trial photographic-lineup identifications on the ground that the procedure was unduly suggestive. They assert that the lineup was prejudicially suggestive in that (1) three of the six photographs were of the three suspects in the present case and that the positions of the photographs in the lineup were never rearranged; (2) the non-suspects were "substantially older" (*i.e.*, as much as ten years) than the suspects.

This court has held, in connection with photographic lineups, that if there are suggestive elements in the pretrial identification procedure making it all but inevitable that the victim will identify one person as the criminal, the procedure is so undermined that it violates due process. *Chism* v. *State*, 312 Ark. 559, 853 S.W.2d 255 (1993); *Bishop* v. *State*, 310 Ark. 479, 839 S.W.2d 6 (1992). Nevertheless, it is for the trial court to determine whether there are sufficient indicia of reliability surrounding the identification to permit its use as evidence, and it is then for the jury to decide what weight the identification testimony should be given. *Hunter* v. *State*, 316 Ark. 746, 875 S.W.2d 63 (1994).

Even if the identification procedure is unnecessarily suggestive, testimony concerning it is admissible if the identification is reliable. *Chism* v. *State, supra*. When a photographic identification is followed by an eyewitness identification at trial, the conviction will be set aside only if the photographic lineup was so suggestive as to create a substantial possibility of misidentification. *Matthews* v. *State*, 313 Ark. 327, 854 S.W.2d 339 (1993).

■ Although Goins and Davis challenge the pretrial photographic identification, neither of the appellants disputes the in-court identification of them by the victim, Melissa Price. Neither Goins nor Davis objected at trial on the basis that Ms. Price's in-court identification of them was unreliable or tainted by the pretrial photographic lineup. Consequently, the issue is not preserved for appeal. *Jackson* v. *State*, 318 Ark. 39, 883 S.W.2d 466 (1994).

■ Further, neither Goins nor Davis has abstracted the photographic lineup itself, thus rendering the questions relating to photo placement and age disparity unreviewable. The failure to abstract a critical document precludes this court from addressing issues concerning it on appeal. *Vickers* v. *State*, 313 Ark. 64, 852 S.W.2d 787 (1993).

■ In addition to their claims that the photographic lineup was unduly suggestive, Goins and Davis also argue that the pretrial identification should have been suppressed because counsel was not present at the time the photographs were shown to Ms. Price and Barry Cooper, who saw the men leave the convenience store after the robbery. Yet neither Goins nor Davis raised this issue below. Hence, the question cannot be considered now. Even constitutional issues may not be raised for the first time on appeal. *Ussery* v. *State*, 308 Ark. 67, 822 S.W.2d 848 (1992).

■ Appellant Davis independently advances the argument, presented at trial, that the publication of his photograph in the *Sheridan Headlight*, a local newspaper, one day before the photographic lineup warranted the suppression of the pretrial identification. Nothing in the record, however, suggests that either Ms. Price or Mr. Cooper saw that edition of the newspaper or that Davis pursued the subject in cross-examination.

### Motion to strike jury panel

In their Points IV and III, respectively, Goins and Davis assert that the trial court erred in denying their motions to strike the entire jury panel. At a pretrial hearing, counsel for both appellants moved to strike the jury panel because some members had sat through voir dire in the separate trial of co-defendant Lamar Boris Davis. As a result, they insist, the entire jury panel was tainted.

Under Ark. Code Ann. § 16-33-304(b)(2)(B)(iv) (Repl. 1994), a challenge for implied bias may be taken in the case of a juror who has "served on a jury trial which has tried another person for the offense charged in the indictment." The plain language of that statutory provision grants criminal defendants the right to exclude all jurors who served in the trials of co-defendants. *McClendon* v. *State*, 316 Ark. 688, 875 S.W.2d 55 (1994). Thus far, however, that right has not been extended to exclude potential jurors who have not actually served as jurors in a prior trial involving the same offense. *Id.*

In the present case, it is undisputed that all of the jurors who either sat in the earlier trial or were stricken by either party were excluded from the venire. The trial court, while refusing to strike the panel, allowed Goins and Davis to explore the possibility of tainting during voir dire. At no point did either Goins or Davis object to an individual juror on the basis of his or her presence during voir dire in the co-defendant's case or during the trial itself. Nor has either Goins or Davis identified on appeal a juror who should not have been seated.

Persons comprising the venire are presumed to be unbiased and qualified to serve. *Franklin* v. *State*, 314 Ark. 329, 863 S.W.2d 268 (1993). The burden is on the contestant to prove otherwise, and this court will not disturb a trial court's ruling in refusing to strike venirepersons absent an abuse of discretion. *Id.* Under the circumstances, it cannot be said that the trial court abused its discretion in refusing to strike the entire jury panel.

*Motion for mistrial*

Davis contends, in his Point IV, that the trial court erred in denying his motion for a mistrial in the wake of a disturbance caused by his co-defendant Goins. A mistrial is a drastic remedy and proper only when the error is beyond repair and cannot be corrected by any curative relief. *Cupples* v. *State*, 318 Ark. 28, 883 S.W.2d 458 (1994). The trial court has wide discretion in this area, and this court will not reverse a denial of a mistrial absent an abuse of discretion or manifest prejudice to the complaining party. *Drymon* v. *State*, 316 Ark. 799, 875 S.W.2d 73 (1994).

After the jury returned with its guilty verdicts and

while the trial court was delivering instructions on sentencing, Goins disrupted the proceedings and was restrained by several law enforcement officers. Davis did not participate in the incident. The trial court denied Davis's motion for a mistrial but offered to deliver an instruction admonishing the jury not to hold Goins's actions against Davis. Counsel requested that the instruction be prepared and given.

Subsequently, the court cautioned the jury as follows:

> Mr. Goins, at his own request, has been allowed to leave the courtroom. You were instructed earlier that Mr. Goins and Mr. Davis are to be treated as separate defendants.

> You should not in any manner consider the outburst or activities of Mr. Goins in considering your sentence for Mr. Davis. You must keep them separate and not count against Mr. Davis anything that arose from Mr. Goins'[s] actions.

The trial court then completed giving the sentencing-phase instructions.

On appeal, Davis argues that he was prejudiced in the extreme by the denial of the mistrial because the jury was free to impute the actions of Goins to himself. Yet the cautionary instruction clearly obviated that possibility. As this court has held, a cautionary instruction to the jury can make harmless any prejudice that might occur. *Strawhacker* v. *State*, 304 Ark. 726, 804 S.W.2d 720 (1991). Moreover, Davis received the alternative relief that he requested from the trial court. *See Cupples* v. *State, supra.* The trial court did not abuse its discretion in refusing to declare a mistrial.

### Remark during closing argument

Finally, Goins urges, in his Point V, that the trial court erred in overruling his objection to a remark made by the deputy prosecutor during closing argument. During the State's closing argument, the deputy prosecutor remarked: "Melissa Price said that the defendant Goins was in that store some three to four weeks before. I submit to you, ladies and gentlemen, he was in there casing that place for subsequent robbery." Counsel for Goins objected on the ground that "[t]here was no evidence of that." The trial court

overruled, stating that the deputy prosecutor was "summarizing what the belief of the State is."

As Goins acknowledges, a trial court has wide discretion in controlling, supervising, and determining the propriety of counsel's arguments, and this court will not reverse absent a showing of manifest abuse. *Brown* v. *State,* 316 Ark. 724, 875 S.W.2d 828 (1994); *Hoover* v. *State*, 262 Ark. 856, 562 S.W.2d 55 (1978). Some leeway must be extended in closing arguments, and counsel may argue every plausible inference that can be drawn from the evidence. *Brown, supra; Abraham* v. *State*, 274 Ark. 506, 625 S.W.2d 518 (1981).

Here, the deputy prosecutor was referring to testimony by Ms. Price that, "a couple of weeks before the robbery," Goins came in her store and asked for a cup of water. She stated that "[h]e stood there a minute and drank his water right in front of the cash register by me, and then he went and bought a honey bun and left." Ms. Price did not see Goins again, but he was driving the vehicle when he and the Davis brothers were stopped by police on the date of the robbery. The State sufficiently proved Goins's presence at the robbery site by circumstantial evidence. *See Bennett* v. *State*, 297 Ark. 115, 759 S.W.2d 799 (1988). Given that evidence, the deputy prosecutor's inference that Goins's purpose in going to the store prior to the robbery was to survey the site while planning the crime was not implausible. The observation constituted fair comment on the part of the deputy prosecutor. It cannot be said that the trial court manifestly abused its wide discretion in overruling Goins's objection.

Both appellants having received life sentences, the record has been examined for any other adverse rulings that might constitute reversible error. *See* Ark. Sup. Ct. R. 4-3(h). None appear.

Affirmed.