# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2854-WMKC

_____

Stanley L. Boysiewick,                     *
                                           *
      Petitioner-Appellee,          *
                                           *
  v.                                     *   Appeal from the United States
                                           *   District Court for the Western
Dora Schriro, Director, Missouri           *   District of Missouri.
Department of Corrections; Jeremiah        *
Nixon, Attorney General, Missouri,         *
                                           *
      Respondent-Appellants.        *
                                           *

_____

Submitted:  March 8, 1999

Filed: June 10, 1999

_____

Before RICHARD S. ARNOLD and HANSEN, Circuit Judges, and STROM,[*]
    Senior District Judge.

_____

STROM, Senior District Judge.

     Stanley L. Boysiewick ("petitioner"), a Missouri inmate, filed a petition for writ

of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for

---

[*]The HONORABLE LYLE E. STROM, Senior United States District Judge for
the District of Nebraska, sitting by designation.

the Western District of Missouri after being convicted of statutory rape in Missouri state court. Petitioner asserted twelve separate claims for relief. The District Court[1] denied all claims. <u>Stanley L. Boysiewick v. Dora Schriro and Jeremiah (Jay) Nixon</u>, No. 97-0094-CV-W-3 (W.D. Mo. May 28, 1998). On the same day, the District Court entered an order granting petitioner a certificate of appealability on the issues of application of Missouri's rape shield law, admission of evidence regarding nude photographs, and judicial bias; and denying a certificate on the remaining issues. <u>Id</u>. Petitioner appeals the denial of habeas relief based on the three issues set forth in the certificate of appealability and also argues the District Court erred in its ruling on the certificate of appealability. For the reasons stated below, we affirm.

## BACKGROUND

In August, 1991, petitioner moved in with Sheila Fisher ("Fisher") and her eleven year old daughter, A.F. In February, 1992, A.F. informed Fisher she had sexual intercourse with Robert Dale Stafford ("Stafford"), a fifty-four year old man that occasionally stayed at Fisher's residence. Fisher claims A.F. specifically told her she had intercourse "with Stafford and no one else." As a result, Fisher restricted several of A.F.'s privileges, including using the telephone, wearing makeup, having boyfriends, and attending school functions. On April 7, 1992, A.F. informed a school counselor petitioner had sexual intercourse with her and that she may be pregnant. Subsequently, petitioner was charged in state court with the statutory rape of A.F.

---

[1]The Honorable Ortrie D. Smith, Unites States District Judge for the Western District of Missouri, Western Division.

Prior to trial and pursuant to MO. REV. STAT. § 491.015 (1986), Missouri's rape shield law, the state moved to prohibit the defendant from introducing in any manner evidence of A.F.'s prior sexual conduct. Thereafter, petitioner filed a written motion as provided in MO. REV. STAT. § 491.015.3 (1986), proposing to offer evidence of A.F.'s statement to Fisher that she had sexual intercourse with Stafford and no one else. At the beginning of trial, the trial court held an in camera hearing to resolve the matter. There, petitioner's attorney argued the evidence of A.F.'s sexual conduct was not being submitted to establish a negative reputation. Rather, petitioner intended to establish that Fisher placed A.F. under restrictions because she had sexual intercourse with Stafford; A.F. despised Fisher's restrictions and wanted to remove herself from Fisher's home; and, thus, the reason A.F. alleged petitioner had sexual intercourse with her was to escape the restrictions.[2] The trial court ruled that any evidence of, or reference to, A.F.'s sexual activity with Stafford was prohibited.

Also before trial, petitioner requested the trial judge recuse herself due to her previous involvement in A.F.'s juvenile proceeding. Prior to petitioner's criminal prosecution, the Missouri Division of Family Services filed a separate action in juvenile court seeking to place A.F. in a foster home. At that time, the trial judge was assigned to juvenile court, and she ordered A.F. placed in foster care. The trial judge did not recuse herself, noting the juvenile court proceeding did not include a hearing and was merely the equivalent of a probable cause determination.

---

[2]Petitioner also argued that A.F.'s statement to the school counselor that she thought she may be pregnant made her statement admissible under MO. REV. STAT. § 491.015.1(2) (1986), which allows the admission of evidence of specific instances of sexual conduct showing an alternative source of pregnancy. However, A.F. never was pregnant and petitioner has not pursued this argument on appeal.

At trial, A.F., the state's only witness, testified petitioner had sexual intercourse with her on three separate occasions between November, 1991, and March, 1992. A.F. also testified that after the second occasion, petitioner took photographs of her nude. No such photographs were ever offered and petitioner did not object to A.F.'s testimony regarding the photographs. However, during his testimony, petitioner denied ever taking any nude photographs of A.F., but admitted taking and having in his possession nude photographs of other women.

On cross-examination, A.F. admitted her strong dislike for the restrictions Fisher imposed on her and admitted she knew if she complained of sexual activity in the home, she would be removed. Petitioner's trial counsel also questioned A.F. regarding a conversation she had with Fisher and petitioner on the evening of the day she had talked to the school counselor. A.F. stated the conversation was about her being pregnant, and, with respect to who the father might be, she testified, "I told them I didn't know because I didn't want to say anything." (Tr. at 127.) Petitioner also testified about the conversation. When asked if A.F. had ever been alone with anyone, petitioner stated, "I know she's been -- she used (sic) to go with a friend of the family out in his truck." (Tr. at 157.)

Finally, Fisher, who at the time of trial was engaged to petitioner, testified on petitioner's behalf. Her testimony was essentially an attempt to discredit A.F. and supply petitioner with an alibi. In the end, the jury found A.F. credible and convicted petitioner on three counts of statutory rape. Due to a previous statutory rape conviction in California, the trial court sentenced petitioner to three consecutive fifty year prison terms. Thereafter, the state court denied petitioner's post trial motions and request for

postconviction relief. Petitioner appealed and the Missouri Court of Appeals affirmed both petitioner's conviction and the subsequent denial of postconviction relief.

## DISCUSSION

We review the District Court's conclusions of law de novo, <u>Carter v. Hopkins</u>, 151 F.3d 872 (8th Cir.), <u>cert. denied</u>, __ U.S. __, 119 S.Ct. 524 (1998), and its factual findings for clear error. <u>Parkus v. Bowersox</u>, 157 F.3d 1136 (8th Cir. 1998). If an issue presents a mixed question of law and fact, our review is de novo. <u>Id</u>.

### A.    Rape Shield Law

Petitioner's first claim for relief is that the application of the Missouri rape shield law violated his constitutional rights. Specifically, petitioner claims the trial court's exclusion of A.F.'s purported statement that she had sexual intercourse with Stafford and no one else denied him of his Sixth and Fourteenth Amendment rights to a complete defense. Petitioner did not raise this claim in his state court appeal and, as a result, procedurally defaulted his habeas claim on this issue, unless he shows both cause for his failure and resulting prejudice. <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991); <u>Nave v. Delo</u>, 62 F.3d 1024, 1032 (8th Cir.1995). Petitioner asserts his appellate counsel's failure to raise the issue on direct appeal was ineffective assistance of counsel, negating the procedural default.

Ineffective assistance of appellate counsel may constitute cause and prejudice. Id.; see also Charron v. Gammon, 69 F.3d 851 (8th Cir. 1995). In order to establish ineffective assistance of counsel,

> [f]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984). Consideration of an ineffective assistance claim "is guided by the principle that 'judicial scrutiny of counsel's performance must be highly deferential.'" Parkus, 157 F.3d at 1139 (quoting Strickland, 466 U.S. at 689). Essentially, we must determine whether, in light of all the circumstances, "counsel's conduct falls within the wide range of reasonable professional assistance." Id. We do not, however, need to address the performance prong if petitioner does not affirmatively prove prejudice. Pryor v. Norris, 103 F.3d 710 (8th Cir. 1996). In order to prove prejudice, petitioner must not simply show "that the errors had some conceivable effect on the outcome of the proceeding." Id. at 713. Rather, he must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. This requires an examination of the underlying error.

-6-

Petitioner contends appellate counsel erred by failing to argue that the application of the rape shield statute[3] denied him of his right to a complete defense. It is well established that the Fourteenth Amendment, along with the Sixth Amendment, guarantee criminal defendants the opportunity to present a complete defense, including the right to present relevant testimony. Crane v. Kentucky, 476 U.S. 683 (1986). However, "the right to present relevant testimony is not without limitation. The right may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." Michigan v. Lucas, 500 U.S. 145, 149 (1991)(quoting Rock v. Arkansas, 483 U.S. 44, 55 (1987)). Such legitimate interests include the traditional concerns of prejudice and issue and jury confusion, as well as the protection of rape victims from harassment and unnecessary invasions of privacy. Id. Accordingly, we must balance the importance of the excluded evidence to petitioner's defense against A.F.'s interests as a rape victim.

Petitioner argues the excluded evidence was vital to his defense because it undermined A.F.'s credibility and was directly exculpatory. In the pretrial motion proposing to offer the excluded evidence, petitioner's trial attorney asserted A.F.'s statement to Fisher that she had sexual intercourse with Stafford was necessary to petitioner's defense in order to explain her further statement that she never had sexual intercourse with anyone else. However, petitioner's trial counsel changed the defense theory at trial. In the offer of proof at the beginning of trial, petitioner's trial attorney

---

[3]The rape shield statute precludes all "opinion and reputation evidence of the complaining witness' prior sexual conduct" and, with certain exceptions, "specific instances of the complaining witness' prior sexual conduct." Mo. Rev. Stat. § 491.015 (1986).

argued the excluded evidence was necessary to support petitioner's defense theory that A.F. fabricated the accusations against him in order to escape Fisher's restrictions. This defense theme was then pursued throughout the trial and argued at summation. Nevertheless, the trial attorney's decision to change the defense theory is not at issue here. The issue is whether the importance of the excluded evidence to petitioner's defense, i.e., A.F. fabricated the accusations in order to escape restrictions, outweighs A.F.'s interests.

We agree with the District Court that the evidence excluded was of minimal importance to petitioner's defense. The critical element of his defense theory was that A.F. was under restrictions, not the reasons for the restrictions. Both A.F. and Fisher testified about the nature and duration of the restrictions. Petitioner's trial attorney elicited testimony regarding A.F.'s attitude towards the restrictions and her knowledge that accusations of sexual abuse in the home would allow her to escape the restrictions. The specific reasons for the restrictions were not critical to petitioner's defense. Furthermore, A.F. allegedly made the excluded statements prior to the last act of sexual intercourse between her and the petitioner. Thus, they were not completely exculpatory as petitioner now suggests.

Finally, petitioner was able to bolster his defense theory through other evidence presented at trial. For example, there was testimony A.F. at one point thought she might be pregnant. However, A.F. never stated who she thought the father was, and petitioner presented evidence A.F. had been alone with another man. Also, Fisher testified A.F. never told her she ever had sexual intercourse with petitioner or that he inappropriately touched her. Accordingly, the District Court properly determined the

-8-

importance of the excluded evidence to petitioner's defense did not outweigh A.F.'s privacy interests as a rape victim as provided by the Missouri legislature. Cf. State v. Madsen, 772 S.W.2d 656 (Mo. 1989)(en banc), cert. denied, 493 U.S. 1046 (1990). Thus, appellate counsel was not ineffective because petitioner did not establish a reasonable probability that, but for appellate counsel's failure to raise the rape shield issue, the outcome of his appeal would have been different. Consequently, petitioner fails to show sufficient cause or prejudice to overcome the procedural default of his habeas claim on this issue.

### B. Evidence of Nude Photographs

Petitioner next claims the admission of testimony regarding his photographing A.F. nude violated his constitutional rights. The District Court, relying on our decision in Sweet v. Delo, 125 F.3d 1144 (8th Cir. 1997), declined to reach the merits of this claim because petitioner failed to object to this evidence at trial and, on direct appeal, the Missouri Court of Appeals only reviewed the issue for plain error. Petitioner asserts admission of the photographing evidence violated his Sixth and Fourteenth Amendment right to a fair trial. However, on direct appeal he argued the evidence should not have been admitted based on state evidentiary law. As we stated in Sweet, "[r]aising a state-law claim in state court that is merely similar to the constitutional claim later pressed in a habeas action is insufficient to preserve the latter for federal review." Id. at 1153. Therefore, we find the District Court correctly concluded that petitioner defaulted on this claim.

In response, petitioner claims his trial attorney was ineffective for failing to object to the evidence, and argues the trial attorney's ineffectiveness constitutes sufficient cause and prejudice to excuse his default. The District Court found the trial attorney provided constitutionally effective assistance of counsel in handling the photographing evidence. We agree and affirm on that issue for the reasons set forth in the District Court's order. See 8th R. 47B.

### C. Judicial Bias

Petitioner asserts the trial judge was biased due to her involvement in A.F.'s juvenile court proceeding and her failure to recuse herself violated the Due Process Clause of the Fourteenth Amendment. We have reviewed the record and petitioner's submissions and find this claim lacks merit. Cf. United States v. Liteky, 510 U.S. 540 (1994). Accordingly, we affirm the District Court's denial of this claim.

### D. Certificate of Appealability

Finally, petitioner appeals the District Court's order granting a certificate of appealability on only three of his habeas claims. Under the provisions of the Antiterrorism and Effective Death Penalty Act of 1996, in order for a 28 U.S.C. § 2254 petitioner to obtain a certificate of appealability from a district court, he must make a substantial showing of the denial of a constitutional right. See 28 U.S.C. S 2253(c)(2). Petitioner argues the District Court ruled on his certificate of appealability without providing him notice and opportunity and thereby abused its discretion. We find any error the District Court committed was harmless. Petitioner briefed the additional

issues for which he seeks review. In doing so, petitioner failed to make a substantial showing that he was denied a constitutional right.

Petitioner also argues the District Court erred in limiting the issues he could raise on appeal. We have previously found limiting appellate review to qualified issues is not only required by 28 U.S.C. S 2253(c)(2), it is has long been an accepted practice in this circuit to review only meritorious issues in habeas cases. See Ramsey v. Bowersox, 149 F.3d 749 (8th Cir. 1998), cert. denied, __ U.S. __, 119 S.Ct 1083 (1999). We affirm the District Court's ruling on petitioner's certificate of appealability.

## CONCLUSION

For the above reasons, we affirm the District Court's denial of petitioner's request for writ of habeas corpus.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.